## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TENAHA LICENSING LLC, )
)
      Plaintiff, )
)
      v. )      Civil Action No.19-208-LPS-SRF
)
VOCERA COMMUNICATIONS, INC., )
)
      Defendant. )
)
)

## REPORT AND RECOMMENDATION

Presently before the Court is the Defendant's motion to dismiss Plaintiff's action for

patent infringement, arguing that the asserted patent claims are ineligible under 35 U.S.C. § 101

because they are directed to an abstract idea.  (D.I. 8)[1]  Defendant also argues that the

Complaint's allegations of indirect patent infringement are insufficient and should be dismissed.

(D.I. 9 at 19-20) As explained below, the asserted patent is directed to an abstract idea and

concedes that all of the claimed techniques and devices asserted by Plaintiff to be inventive were

actually well-known and conventional.  Therefore, the Court recommends that the District Court

GRANT the motion, finding the patent claims ineligible and dismissing the case with prejudice.

## I.    BACKGROUND

Plaintiff Tenaha Licensing LLC ("Plaintiff" or "Tenaha") is a Texas corporation with its

principal place of business in Plano, Texas.  (D.I. 1 at ¶ 1)  Defendant Vocera Communications,

Inc. ("Defendant" or "Vocera") is a Delaware corporation with its principal place of business in

San Jose, California.  (Id. at ¶ 2; D.I. 10 at ¶ 2)

---

[1]      The briefing associated with Defendant's Motion is found at D.I. 9, D.I. 14, and
D.I. 15.

Tenaha is the assignee of the asserted patent in this patent infringement suit—U.S. Patent No. 8,238,869 ("the '869 patent"). (D.I. 1, ex. A) The '869 patent is entitled "LIFESAVER PERSONAL ALERT AND NOTIFICATION DEVICE[,]" ('869 patent, Title; D.I. 1 at ¶ 8), and describes methods of relaying notifications to users. (*See* '869 patent, col. 1:10-11 (describing the "field of invention" as "devices and methods for personal alert and notification")) The background section of the patent describes two categories of "currently known alert systems" that provide "specific message[s]" to either an individual or the general public: "wide area alert/notification systems" and "local area alert/notification systems[.]" (*Id.*, col. 1:14-18; *see also id.*, col. 1:19-62 (describing each system)) The '869 patent explains that the "present invention is directed to systems, devices and methods of transmitting in a wide area notification zone a plurality of notifications to a plurality of users in an automated, independent, and localized manner." (*Id.*, cols. 1:66-2:12) The specification explains this goal is accomplished by activating a "low-range transceiver" to "send a notification to [a] plurality of users via wearable transceivers" in response to a "signal from a wide area notification device[.]" (*Id.*, col. 2:2-12) "Most preferably," the low-range transceiver is activated by a "trigger device." (*Id.*; *but see id.*, cols. 10:63-11:12 (asserted claim 15 not reciting "trigger device")) The patent describes, in expansive terms, several "suitable devices" for the "wide area notification device," "trigger device," "low-range transceiver," and the "wearable transceiver" of the invention. (*Id.* cols 2:13-9:34)

Plaintiff alleges Defendant infringes "at least claim 15 of the '869 patent":

> 15. A method of providing emergency and non-emergency event notification to a plurality of users, comprising:
>
> > using a low-range transceiver to automatically relay within a wide area notification area a first emergency notification

2

> signal from a wide area notification device, and to further
> provide an audible and/or visible alert notification in
> response to the first emergency notification signal; and

> manually, and independently from the first emergency
> notification signal, providing a second non-emergency
> notification signal to at least one of the plurality of users
> using the low-range transceiver, wherein the non-
> emergency notification signal is a user-specific and event-
> specific notification signal that is transmitted by an
> operator of the low-range transceiver to a wireless
> transmitter that is worn by a user, wherein the user is a
> person other than the operator.

(*Id.*, cols. 10:63-11:12; D.I. 1 at ¶ 14)

Plaintiff filed its Complaint for patent infringement on January 31, 2019. (D.I. 1) On

March 28, 2019, Defendant filed the pending motion to dismiss the Complaint for lack of patent-

eligible subject matter pursuant to 35 U.S.C. § 101 and for failure to state a claim of indirect

infringement. (D.I. 8; D.I. 9) Briefing was completed on May 28, 2019, (D.I. 15), and the Court

heard oral argument on November 15, 2019, (D.I. 22 (hereinafter "Tr.")).

## II. STANDARD OF REVIEW

### A. Failure to State a Claim

Vocera moves to dismiss the pending action pursuant to Rule 12(b)(6), which permits a

party to seek dismissal of a complaint for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). According to Vocera, Tenaha's Complaint fails to state a

claim because the asserted claims of the '869 patent are ineligible for patent protection under 35

U.S.C. § 101. Patent eligibility under 35 U.S.C. § 101 is a threshold test. *Bilski v. Kappos*, 561

U.S. 593, 602 (2010). Therefore, "patent eligibility can be determined at the Rule

12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the

3

eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). Dismissal under Rule 12(b)(6) is only appropriate if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). However, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that patentable subject matter extends to four broad categories: "Whoever invents or discovers any new and useful [1] process, [2] machine, [3] manufacture, or [4] composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three exceptions to the subject matter eligibility requirements of [Section] 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp, Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012), which are "part of the storehouse of knowledge

4

of all men . . . free to all men and reserved exclusively to none," *Bilski*, 561 U.S. at 602 (internal quotation marks and citations omitted).

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*DIRECTV*") ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept

5

underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the [ineligible concept] itself." *McRO*, 837 F.3d at 1312. "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept." *Alice*, 573 U.S. at 222 (internal quotation marks omitted). Instead, the claim elements must "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

## III. DISCUSSION

In resolving Defendant's Motion, the Court will first discuss which claim will be specifically addressed herein as representative. Thereafter, it will analyze the relevant claim under both steps of the test for patent eligibility set out in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). Finally, the Court will consider whether any factual disputes preclude granting Defendant's motion and whether leave to amend the Complaint should be granted.

6

## A.    Claims at Issue

As a preliminary matter, the Court considers which claims of the '869 patent the Court must analyze to fully resolve the pending Motion. Defendant argues that claim 15 of the '869 patent is representative. (D.I. 9 at 3) For its part, Plaintiff does not contest Defendant's assertion of representativeness. (D.I. 14; *see also* Tr. at 5) Indeed, Plaintiff's allegations in the Complaint and arguments in its opposition to the Motion appear to support Defendant's position that claim 15 is sufficiently representative. For instance, Plaintiff's Complaint only explicitly calls out claim 15. (D.I. 1 at ¶ 14) Likewise, Plaintiff's opposition brief only refers to claim 15, referring to it as "exemplary[.]" (D.I. 14 at 2) Thus, for the purposes of considering the present Motion, the Court will treat claim 15 as representative. *Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").[2]

## B.    *Alice* Step One

Defendant asserts that claim 15 is directed to the abstract idea of "relaying notification signals[.]" (D.I. 9 at 1)[3] In response, Plaintiff does not dispute that the concept of "relaying

___

[2]       Although Plaintiff's opposition identifies no specific claims of the '869 patent other than claim 15, Plaintiff does mention a "trigger device" in its discussion of step two of *Alice*. (D.I. 14 at 11-13) The Court notes that "trigger device" does not appear in claim 15, but is recited in other claims. ('869 patent, cols. 9:39-45 (claim 1), 10:25-28 (claim 8), 11:16-18 (claim 17)) Thus, the Court will address the contention that the "trigger device" provides an inventive concept in its analysis of step 2 below, but will not consider other unargued limitations of the dependent claims.

[3]       Defendant's Motion includes several similar articulations of the abstract idea. (*See, e.g.*, D.I. 9 at 1 ("[r]elaying emergency and non-emergency notifications" and "relaying notification signals"), 3 ("signal relay"), 7 ("relaying notification signals"), 8 ("automatically relaying signals between notification devices" and "relaying notification signals"), 9 ("automatic signal relay"), 11 ("relaying notification signals"), 13 ("automatic signal relay"), 18 ("relaying

notification signals" is an abstract idea. Instead, it makes a few different arguments about why, in its view, the claim is not "directed to" such an abstract idea—e.g., that Defendant's distillation of claim 15 reads out "limiting detail and inventive concepts[.]" (D.I. 14 at 7)

The Court agrees with Defendant that claim 15 is drawn to the idea of relaying notification signals and that this idea is abstract—a "disembodied concept . . . untethered from any real-world application." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013) (internal quotation marks and citation omitted), *aff'd*, 573 U.S. 208 (2014); *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) ("[T]he broad concept of communicating information wirelessly, without more, is an abstract idea."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding claims directed to "communicat[ing] a notification to [a] user via a device" when a pre-set spending limit was reached to be ineligibly directed to an abstract idea); *DIRECTV*, 838 F.3d at 1258 (finding patent claims directed to "the function of wirelessly communicating regional broadcast content to an out-of-region recipient" to be ineligible). The '869 patent itself provides significant indications that claim 15 is in fact "directed to" this concept.

First, the specification broadly describes the invention as being directed to "alert and notification transmission." ('869 patent, Abstract; *see also id.*, Title ("lifesaver personal alert and notification device") (capitalization omitted)) The patent describes such transmission using two modes: "automatic" transmission of an "emergency signal" using a "low-range transceiver," and "manual" transmission (i.e., requiring "manual user input") of a "non-emergency

notification signals"); *see also* D.I. 15 at 1 ("relaying and transmitting notification signals" and "relaying and transmitting signals"), 2 ("automatic and manual signal relaying"), 5 ("relaying and transmitting signals")) For simplicity's sake, below, the Court will refer to the abstract idea generally as "relaying notification signals."

8

notification[.]" (*Id.*, Abstract) The specification also emphasizes the ability to relay emergency notification signals "automatically[.]" (*Id.*, cols. 1:52-57 (criticizing manual relay of emergency notifications via local paging systems in the prior art because they "have to [rely] on the operator receiving an emergency message in the first place and . . . then . . . manually relay[ing] that message though the local paging system."), 3:6-11 ("automatically, plurally, and locally relay[ing]" an emergency signal from a wide area notification device to a low-range transceiver, and subsequently to users), 3:41-53 ("automatically set off an alert to a plurality of wearable transceivers that will notify the wearer of an emergency" and "no user intervention is required"), 5:44-51, 6:4-12 ("such notification will not require the low-range transceiver to be manned as all needed operations are performed in an operator-independent manner"), 7:65-8:5)

In addition to the specification, the claim language itself shows that the invention is focused on relaying notification signals. The preamble to claim 15 is broadly worded as a "method of providing emergency and non-emergency event notification to a plurality of users[.]" (*Id.*, col. 10:63-64); *see Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (noting that it was not error for the district court to cite "to the preamble in its review of whether the claims are directed to an abstract idea" where the court's inquiry was "centered on determining the 'focus' of the claims"). The body of the claim explains that this notification is provided either by: (1) "automatically relay[ing]" a notification signal from a "wide are notification device" in the case of an emergency, or (2) manually providing a non-emergency notification in a manner that is described as "common[]" in the background section of the specification (as described below). ('869 patent, cols.1:41-57, 10:63-11:12) Thus, the "claimed advance" here is the automatic relay of a notification signal in cases of emergency, which shows that the focus of the claim is on relaying notification signals. *See Am. Axle & Mfg.,*

9

*Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1361 (Fed. Cir. 2019) ("To determine what the claims are 'directed to' at step one, we look to the 'focus of the claimed advance.'") (citing cases); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149-50 (Fed. Cir. 2019).

To rebut Defendant's step one argument, Plaintiff argues that the claims recite "improvements to emergency notification signaling" and do so "with limiting detail." (D.I. 14 at 7-11 (citing *id.* at 2-6)) Plaintiff argues that three specific limitations in Claim 15 provide these "inventive features" at step one. (*Id.* at 8 (emphasis omitted)) As discussed below, however, the specification of the '869 patent refutes Plaintiff's argument that these limitations are an improvement in technology. Therefore, these are not the types of "non-abstract improvements in the functionality of an existing technological process" that could render patent claims eligible at step one. *Cf. Koninklijke KPN*, 942 F.3d at 1146-51 (finding eligible claims with a specific feature of "varying the way check data is generated by modify[ing] the permutation applied to different data blocks[,]" because the specification explained that this claimed feature improved the detection of systemic errors in data transmission) (emphasis omitted).[4]

First, Plaintiff argues that the "particular manner and timing of the response to the emergency signal" is an inventive feature. (D.I. 14 at 8, 10). Plaintiff identifies the following portion of Claim 15 as corresponding to this feature: "an audible or visible alert notification is initiated in response to the first emergency notification signal." (*Id.* (quoting '869 patent, col.

---

[4]     Although the relevant claims in *Koninklijke KPN* related to data generation and manipulation, the United States Court of Appeals for the Federal Circuit found that they were not directed to an abstract idea at step one of *Alice*. The court found that the claims recited more than the desired result of catching previously undetectable systemic errors; instead, the claims recited a specific solution that improved the function of prior art error detection systems. *Id.* at 1151-52.

10

11:1-3)) Contrary to Plaintiff's assertion that this is an improvement in technology, however, the '869 patent admits that each of these aspects (audible alert, visual alert, and alert in response to an emergency signal) was known. For instance, the background section of the '869 patent describes "[c]ommonly known" audible notifications, such as "Tone Alert Radios," "sirens," and "public announcement systems," and visible notifications, such as "public bill boards." ('869 patent, col. 1:24-29) The background also describes "[c]ommonly known" notifications sent in response to an emergency signal. (*Id.* ("automated dialers that call a geographically defined group of phone and/or pager subscribers."); *see also id.*, col. 1:44-47 (describing a local area notification used "in hospitals that alert a doctor or nurse of a patient in need of attention")) Furthermore, merely providing the notification "in response to the first emergency notification signal" cannot supply the inventive feature because this is the concept of signal relaying, which is the abstract idea to which the claim is directed. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself.").

Next, Plaintiff argues two aspects of the non-emergency signal "provide inventive features" at step one. (D.I. 14 at 8 (emphasis omitted)) Plaintiff highlights that the non-emergency signal: (1) is initiated "manually[] and independently from the first emergency notification signal" and is sent to the "users [of] the low-range transceiver" ('869 patent, col. 11:4-7); and (2) is "user-specific and event-specific" and is "transmitted by an operator of the low-range transceiver to a wireless transmitter that is worn by a user [(who cannot also be the operator)]," (*id.*, col. 11:7-12). These features are not inventive; they are described as known and commonly-practiced features of the "local area alert/notification systems" described in the background of the invention. (*Id.*, col. 1:41-57) For instance, the specification explains that

11

such prior-art low-range transceivers "require[d] the operator to . . . *manually* relay [the] message through the local paging system." (*Id.*, col. 1:56-57 (emphasis added)) These prior-art notifications were sent to the "users" of the low-range system (e.g., patrons of a restaurant or a nurse or doctor at a hospital). (*Id.*, col. 1:44-47) The background also provides examples of commonly-known "user-specific and event specific" notifications, such as "indicating availability of a table in a restaurant" or "alert[ing] a doctor or nurse of a patient in need of attention." (*Id.*; *see also id.*, col. 1:14-18 ("individual parties or the general public are addressed with a *specific message*") (emphasis added)) Finally, the background teaches that these notifications were transmitted by an "operator" of the low-range transceiver (i.e., the "local paging system"). (*Id.*, col. 1:56-57)

For all of these reasons, the Court finds that claim 15 is directed to the abstract idea of relaying notification signals and does not recite improvements in technology that would end the inquiry at step one. Thus, the Court proceeds to step two.

### C.     *Alice* Step Two

At step two, the Court must ask if the claim's elements, either considered individually or taken together, recite an "inventive concept" that amounts to significantly more than the abstract idea itself. *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted). And in doing so, the Court must be mindful that if a claim's only alleged inventive concept involves the application of the abstract idea using "conventional and well-understood techniques[,]" then the claim has not been transformed into a patent-eligible application of an abstract idea. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

12

Defendant argues that the claims contain no inventive features that would otherwise save them from ineligibility at step two. (D.I. 9 at 13-16; D.I. 15 at 5-6) It asserts that claim 15 simply discloses the abstract idea along with a number of generic computer components, and that the claim is written in broad, functional language, failing to describe how its features are to be implemented. (D.I. 9 at 14-16) Additionally, Defendant asserts that the claims specify no inventive concepts to overcome the "disadvantages" of the prior art notifications systems described in the specification, further evidencing that the claims lack inventive concepts.

Plaintiff disputes Defendant's characterization of the claims, asserting they contain "several inventive features" such as "automatic, independent, and locally restricted emergency signaling." (D.I. 14 at 11-12) The step two portion of Plaintiff's brief, however, does not describe these allegedly inventive features, does not explain how they are asserted to be inventive, and does not show where they are captured in the claims. Instead, Plaintiff relies on internal citations to other portions of its brief. (*Id.* (citing "Sections IV.B, IV.C, V.B.2," found at D.I. 14 at 2-6, 9-11)) As discussed below, however, those portions of Plaintiff's brief fail to show inventive concepts that would save the claims at step two of *Alice*.

In Section IV.B, Plaintiff block-quotes portions of the '869 patent specification that describe "disadvantages" in prior-art notification systems and a description of the "present invention[.]" (D.I. 14 at 2-3) In Section IV.C, Plaintiff argues that "[t]he [s]pecification demonstrates how [allegedly-]inventive features are implemented with *limiting detail*," quoting portions of the specification describing various features. (*Id.* at 4-5 (emphasis original)) The portion of the specification relied upon most heavily by Plaintiff is the first sentence in the summary of the invention, which states that the notifications are sent "in an automated, independent, and localized manner." ('869 patent, cols. 1:66-2:2; *see* D.I. 14 at 3 (quoting this

13

portion of the specification), 4 (touting "automatic, independent, and locally restricted emergency signaling"), 5-6 (same), 11-13 (same)) The specification itself, however, concedes that these features are not inventive concepts.

Regarding "automated," the specification concedes that "automated" notification systems were already "[c]ommonly known" on the art. ('869 patent, col. 1:24-29) And even if such automatic relaying was not explicitly spelled out in the specification as being known, mere automation is not enough, *Cellspin Soft*, 927 F.3d at 1316 ("[T]he need to perform tasks automatically is not a unique technical problem.") (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015)), particularly where, as here, the claim does not describe the particular manner in which the automation is accomplished and instead recites the end result, *see DIRECTV*, 838 F.3d at 1258 (finding patent ineligible where it "claim[ed] the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (finding "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention" at step two); *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018) ("The problem, however, is that the idea of a chat session separate from the original website is not an invention; it is a disembodied concept. The asserted claims of the [challenged] patent recite the concept, but not the way to implement it.").

To the extent Plaintiff argues that the "automation" is inventive here because it uses a "trigger device" (e.g. claims 1, 8, and 17, but not claim 15), (D.I. 14 at 11-12), this argument fails in light of the broad and generic description of the trigger device in the specification. (*See* D.I. 15 at 5-6); *see also Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*, Case No.

14

2:17-CV-00328-JRG-RSP, 2017 WL 5571331 (E.D. Tex. Sept. 15, 2017) (finding that a "trigger system" described by the specification in "unlimited terms" failed to rescue the challenged claims step two), *report and recommendation adopted*, 2017 WL 5557519 (E.D. Tex. Nov. 17, 2017), *aff'd sub nom. Mantis Commc'ns, LLC, v. Edible Arrangements, LLC*, 739 F. App'x 639 (Fed. Cir. 2018). The specification describes "suitable trigger devices" in a single paragraph in column 7 of the '869 patent specification. ('869 patent, col. 7:33-64) In that paragraph, the specification describes several embodiments of the trigger device and notes that it "may be configured in various manners and the particular configuration will at least to some degree depend of the specific wide area notification device." (*Id.*) At its simplest, "the trigger device is a simple wire connecting the wide are notification device with the low-range transmitter." (*Id.*, col. 7:48-50) Thus, this broadly and generically described trigger device fails to provide an inventive concept sufficient to save the claims at step two.

Regarding "independent," this merely refers to the fact that the notification is automatically transmitted—i.e., "in an operator-independent manner." (*Id.*, col. 6:9-12) Thus, this feature fails to rescue the claims for the same reason as "automated," discussed above.

Finally, regarding "localized," this term merely conveys that the transmission by the low range transceiver is limited in range. (*Id.*, col. 6:4-9 ("locally restricted (typically by range of [the] low-range transceiver) emergency signal"); Tr. at 31 (highlighting '869 patent, col. 7:10-12, which states that in the "exemplary" system displayed in Fig. 1, the "local notification area . . . is entirely within [the] wide area notification zone")) However, as described above, the background of the '869 patent specification explains that various "local area alert/notification systems" (i.e., localized notification systems) were "commonly" known in the prior art. ('869 patent, col. 1:41-57; *see also* Tr. at 26 (Plaintiff's counsel conceding "[t]hat piece of equipment,

15

the low range transceiver existed in the prior art.")) Thus, the specification directly conflicts with Plaintiff's argument that the feature of limited range notifications (i.e., "locally restricted emergency signaling") is inventive.

In sum, the Court finds that the features highlighted by Plaintiff as "inventive" are conceded to be commonly known by the specification, thus the claims fail to capture any inventive concepts that would preclude dismissal at step two.

## D. Factual Disputes

Plaintiff asserts that dismissal is inappropriate here due to factual disputes regarding conventionality. (D.I. 14 at 12-14 (citing *Berkheimer*, 881 F.3d 1360)) Plaintiff's argument regarding unconventionality, however, does not pinpoint specific limitations in the claims, and instead generally disputes whether the "claimed techniques" as a whole were "conventional in the year 2005." (*Id.* (emphasis omitted)) But this very argument has already been rejected by the Federal Circuit in *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341 (Fed. Cir. 2019):

> The appropriate question is not whether the entire claim as a whole was "well-understood, routine [and] conventional" to a skilled artisan (i.e., whether it lacks novelty), but rather, there are two distinct questions: (1) whether each of "the [elements] in the claimed [product] (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field," *Mayo*, 566 U.S. at 73, 132 S.Ct. 1289, and (2) whether all of the steps "as an ordered combination add[ ] nothing to the laws of nature that is not already present when the steps are considered separately," *id.* at 79, 132 S.Ct. 1289 (emphasis added).

*Chamberlain*, 935 F.3d at 1348–49. In other words, the question here is "beyond the idea of [relaying notification signals], what elements in the claim may be regarded as the 'inventive concept'?" *Id.* The only "specific improvements" pointed to by Plaintiff are the "automatic,

16

independent, and locally restricted emergency signaling[,]" which, as described above, are conceded by the specification to have been commonly known.

Plaintiff also challenges Defendant's description of the "trigger device" as being "expert-like" and "without technical support." (D.I. 14 at 13 (emphasis omitted); *see also* Tr. at 34) But Plaintiff fails to provide any contrary description explaining how the trigger device could possibly be described as "inventive," considering the broad and generic description of the trigger device in the specification.

The Court finds Plaintiff's assertions of "factual disputes" to be without merit, and thus recommends that the Motion is properly granted at the Rule 12 stage. *Berkheimer* is not to the contrary. The Federal Circuit, in *Berkheimer*, made clear that its holding was narrow, stating that "[n]othing in this decision should be viewed as casting doubt on the propriety of those cases" in which "[p]atent eligibility has . . . been resolved on motions to dismiss or summary judgment." *Berkheimer*, 881 F.3d at 1368. The Court held that "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law." *Id.*

Likewise, in the counterpart decision from the Federal Circuit regarding motions to dismiss—*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)—the Court held that dismissal was inappropriate where Plaintiff included "concrete allegations in the second amended complaint" that the claimed combination was "not well-understood, routine, or conventional[,]" and was "improvement to the functioning of the computer" and the court had "been shown no proper basis for rejecting those allegations as a factual matter." 882 F.3d at 1128; *see also Cellspin Soft*, 927 F.3d at 1317-18 (finding "plausible and specific" factual

allegations regarding conventionality in a complaint can defeat dismissal when they are and not "wholly divorced from the claims or specification"). Here, neither criteria are met—there are no plausible allegations of unconventionality in the Complaint[5] and Defendant has persuasively pointed to portions of the specification that affirmatively refute such allegations made in Plaintiff's opposition. Thus, the Court finds that no issues of fact preclude granting Defendant's Motion. *See Secured Mail*, 873 F.3d at 913 ("[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification.") (internal quotation marks and citations omitted).[6]

---

[5]     At the oral argument, Plaintiff pointed to paragraphs 10 through 12 of the Complaint, arguing those paragraphs alleged inventive concepts. (Tr. at 35-36) These paragraphs, however, fail to allege specific technological improvements. Paragraph 10 states a "need for improved systems" but does not explain what "improvement" is being asserted or how any improvement is accomplished. (D.I. 1 at ¶ 10) Paragraph 11 only describes the '869 patent in highly-generic terms, again failing to specify any particular improvement to notification systems. (*Id.* at ¶ 11) Finally, paragraph 12 alleges that the patent does not "take a broad and simplistic method or process and apply it to a general-purpose computer[,]" but instead "specifically establish[es] the process of utilizing various transmission devices[,]" and then lists several commonly-known devices. (*Id.* at ¶ 12) Yet again, paragraph 12 fails to allege any specific improvement. As the Federal Circuit stated, "[a]n improved result, without more stated in the claim is not enough to confer eligibility to an otherwise abstract idea[;] [t]o be patent-eligible, the claims must recite a specific means or method that solves a problem in an existing technological process." *Koninklijke KPN*, 942 F.3d at 1150. Here, the Complaint fails to even allege what the "improved result" is, let alone show a "specific means or method that solves a problem[.]" *Id.*

[6]     In its opposition, Plaintiff argues that claim construction is necessary before the Court can resolve the parties' Section 101 arguments. (D.I. 14 at 14) But Plaintiff's argument is entirely conclusory; it presents no proposed constructions for the four terms it plucks from the claim language and fails to explain how construction of these terms would make any difference in the Section 101 inquiry. (*Id.*); *see CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012). Likewise, at oral argument, Plaintiff failed to support its argument that claim construction was necessary. (Tr. at 36-37) "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349 (affirming the district court's dismissal of the patent claims as "patent-ineligible under § 101 at the pleading stage"); *see also OIP Techs.*, 788 F.3d at 1360-62; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014). And in similar situations where a party failed to explain how claim construction could impact the Section 101 analysis, courts have proceeded without

## E. Leave to Amend

Defendant requests that the Motion be granted with prejudice because "leave to amend would be futile[.]" (D.I. 9 at 20; D.I. 15 at 9) Plaintiff, in its briefing, made no attempt to rebut this assertion of futility, did not request leave to amend, and failed to proposed any additions to the Complaint that could plausibly overcome Defendant's Motion.[7]

The Court agrees that granting leave to amend would be futile here because the specification affirmatively contradicts Plaintiff's arguments regarding "specific improvements" at step one and "inventive features" at step two. Thus any extrinsic evidence supporting Plaintiff's arguments (such as an expert declaration) would be contrary to the intrinsic evidence, and thus need not be accepted as true. *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 756 (Fed. Cir. 2019) ("Because [plaintiff's] expert declaration made allegations inconsistent with the [challenged] patent, the district court was not obliged to accept them as true" when considering a motion to dismiss). Similarly, any allegation of unconventionality in a subsequently-amended complaint would not be plausible considering the

---

claim construction. *Smart Software, Inc. v. PlanningEdge, LLC*, 192 F. Supp. 3d 243, 247 (D. Mass. 2016) (deciding eligibility under Section 101 without claim construction where plaintiff failed to offer any specific claim construction issues that would affect the analysis); *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. CV 1:16-1055-GMS, 2017 WL 3315279, at \*6 (D. Del. Aug. 3, 2017). Above, where the Court has discerned that a claim construction issue might have an impact on resolution of this Motion, the Court has adopted Plaintiff's proposed constructions if they were at all plausible. *See Content Extration & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming dismissal based on patent ineligibility where "even when construed in a manner most favorable [to plaintiff], none of [the plaintiff's] claims amount to 'significantly more' than the abstract idea").

[7]     Plaintiff asserted at oral argument that leave to amend should be granted, invoking *TrackTime, LLC v. Amazon.com, Inc.*, C.A. No. 18-1518 (MN), 2019 WL 2524779, at \*6 n.1 (D. Del. June 19, 2019). (Tr. at 36) Unlike the situation in *TrackTime*, the Court here is convinced that any amendment would be futile due to the nature of Plaintiff's arguments regarding inventiveness and the concessions in the '869 patent specification, as described above.

19

contrary teachings of the specification. *Secured Mail*, 873 F.3d at 913 ("a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification.") (internal quotation marks and citations omitted); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1019 (Fed. Cir. 2019) ("There is no reason to task the district court with finding an inventive concept that the specification and prosecution history concede does not exist.").[8]

## IV. CONCLUSION

For all of these reasons, the Court recommends that the District Court GRANT Defendant's Motion to Dismiss with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[8]    Because the Court recommends granting dismissal with prejudice due to patent ineligibility, the Court need not decide whether Plaintiff's pleading regarding indirect infringement fails for other reasons. (*See* D.I. 9 at 19-20; D.I. 14 at 14-15; D.I. 15 at 9) The Court notes, however, that Plaintiff's recharacterization of its Complaint allegations does not square with the pleading itself. Plaintiff asserts the Complaint alleges Vocera "*specifically intended* that [its customers] infringe the patent-in-suit." (D.I. 14 at 14 (emphasis in original)) However, the Complaint actually alleges Vocera "specifically *intended that its customers use the Vocera product* that infringes at least claim 15[.]" (D.I. 1 at ¶ 17 (emphasis added)) Specifically intending that customers use a product is not the same as specifically intending that customers infringe a patent. The crucial link—awareness by Defendant that its customers' use of the accused products infringes the '869 patent—appears to be missing here. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) ("[F]or Defendants' marketing activities to plausibly suggest a specific intent to induce infringement, there must be knowledge of the customers' infringement (which Plaintiff fails to adequately plead)."); *see also IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017).

20

to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 2, 2020

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE